# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

OMAR E. PADILLA-TORRES,

                     Petitioner,      :            Case No. 2:24-cv-4274

       - vs -                         District Judge Algenon L. Marbley
                                           Magistrate Judge Michael R. Merz

WARDEN, London Correctional
   Institution,
         :
                Respondent.    :

---

# DECISION AND ORDER ON PETITIONER'S MOTION FOR DISCOVERY

---

       This habeas corpus case, brought *pro se* by Petitioner Omar Padilla-Torres under 28 U.S.C.

§ 2254, is before the Court upon Petitioner's Motion for Discovery which asks the Court "to order

the respondent, by and through the State of Ohio, to furnish documents Audio Recordings along

with a bite back [?] to the attached interrogatories and Written Depositions." (ECF No. 11, PageID

1221).

       Petitioner's Motion seeks evidence in support of his First Ground for Relief which reads:

> **GROUND ONE**: The cumulative effect of the State's failure to
> provide certain discoverable evidence resulted in a violation of Mr.
> Padilla-Torres [sic] right to due process required by the U.S. and
> Ohio Constitutions.
>
> **Supporting Facts:** There was favorable evidence that was not
> provided to the defendant. As the brief relates 2 categories of
> suppressed evidence was identified by the Petitioner. These
> recordings are favorable and potentially useful to Padilla-Torres.

Petition (ECF No. 1, PageID 5).

1

Violations of the Ohio Constitution are not cognizable in a federal habeas corpus proceeding. Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar, J. concurring). It follows that discovery is not warranted on claims of violation of the Ohio Constitution.

However, the Magistrate Judge reads Ground One as raising primarily a claim of violation of the Due Process Clause of the Fourteenth Amendment. Under *Brady v. Maryland*, 373 U.S. 83 (1963), the State has a duty to produce exculpatory evidence in its possession in a criminal case. If the State withholds evidence and it is material, the conviction must be reversed.

Padilla-Torres raised a *Brady* claim as his first assignment of error on direct appeal and the Ohio Tenth District Court of Appeals decided it as follows:

> {¶ 60} In his first assignment of error, appellant argues the state suppressed evidence—recordings of conversations between A.C. [Petitioner's ex-wife] and appellant—in violation of his constitutional right to due process and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). (Appellant's Brief at 14-19.) He explains why he believes additional recordings were withheld, destroyed, or lost and suggests the trial court erred in admitting the six recordings over defense counsel's objection under *Brady*.
>
> **1. Controlling Law**
>
> {¶ 61} The crux of appellant's arguments begins with *Brady*, wherein the Supreme Court of the United States held that due

process requires the prosecution to provide to the defense any evidence favorable to the accused that is material either to guilt or punishment. 373 U.S. at 83, 87-88, 83 S.Ct. 1194. *See also Smith v. Cain*, 565 U.S. 73, 75, 132 S.Ct. 627, 181 L.Ed.2d 571 (2012) (a criminal defendant's due process rights are violated when the state "withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment"). The Supreme Court subsequently held that such obligation includes evidence affecting the credibility of a prosecution witness, including impeachment evidence. *See Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). A *Brady* violation occurs when: (1) the state suppresses evidence, either willfully or inadvertently; (2) the evidence is favorable to the defendant as either exculpatory (material) or impeachment evidence; and (3) prejudice has resulted to the defendant. *State v. Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470, ¶ 19, citing *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). Prejudice occurs when there is a reasonable probability that the result of the trial would have been different had the evidence been disclosed to the defense. *Id.*, citing *Kyles v. Whitley*, 514 U.S. 419, 433-34, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), quoting *United States v. Bagley*, 473 U.S. 667, 678, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

{¶ 62} If a defendant cannot demonstrate that undisclosed or lost evidence is materially exculpatory, then, to establish a due process violation, the defendant must demonstrate the police or prosecution lost, destroyed, or failed to preserve the "potentially useful" evidence in bad faith. *State v. Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239, 878 N.E.2d 1, ¶ 10; *Arizona v. Youngblood*, 488 U.S. 51, 57-58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). "The term 'bad faith' generally implies something more than bad judgment or negligence." (Citations omitted.) *State ex rel. Horton v. Kilbane*, 167 Ohio St.3d 413, 2022-Ohio-205, 194 N.E.3d 288, ¶ 31. It "imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive[,] or ill will partaking of the nature of fraud." (Citations omitted.) *Id. See also State v. Wolf*, 154 Ohio App.3d 293, 2003-Ohio-4885, 797 N.E.2d 109, ¶ 14 (7th Dist.), quoting *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 276, 452 N.E.2d 1315 (1983). A continuing cavalier attitude toward preservation of evidence with an abundantly apparent evidentiary value can, under certain facts and circumstances, amount to "bad faith." *See, e.g., State v. Durnwald*, 163 Ohio App.3d 361, 2005-Ohio-4867, 837 N.E.2d 1234, ¶ 31-36 (6th Dist.); *State v. Benson*, 152 Ohio App.3d 495, 2003-Ohio-1944, 788 N.E.2d 693, ¶ 14-15 (1st Dist.).

3

### 2. Trial court proceedings related to potentially missing recordings

{¶ 63} Although trial counsel knew about the six recorded conversations before trial began, neither the prosecutor nor appellant's defense counsel knew A.C. would testify she recorded these conversations at the request of law enforcement. (*See, e.g.*, Tr. Vol. II at 299; Tr. Vol. III at 438.) After A.C. testified that Detective Haas asked her to record her conversations with appellant, appellant's trial counsel moved for either a continuance or a mistrial pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). (Tr. Vol. II at 299-302.) These oral motions were predicated on the argument that such statements were unconstitutionally obtained by a third-party actor on behalf of the state because "[n]o *Miranda* rights were given when these statements were elicited from [appellant]." (Tr. Vol. II at 300.) Had such information been known prior to trial, appellant's counsel argued, the defense would have moved to suppress the recordings before trial commenced. (Tr. Vol. II at 300.) In denying those motions, the trial court noted that nothing in the record suggested appellant's statements to A.C. were obtained while he was "in custody," which is necessary for purposes of *Miranda*. (Tr. Vol. II at 301.) *See, e.g.*, *Cleveland v. Oles*, 152 Ohio St.3d 1, 2017-Ohio-5834, 92 N.E.3d 810, ¶ 9-24. Appellant does not challenge that ruling on appeal.

{¶ 64} After the six recorded conversations were played at trial (without objection), A.C. testified on cross-examination that, between August and October 2018, she recorded "probably 100" conversations with appellant. (Tr. Vol. II at 335-37. *See also* Tr. Vol. II at 295-96.) Some of those recordings were lost when her phone malfunctioned, while others (beyond the six played at trial) may have been deleted by her, not turned over to police, or provided to police but not produced in discovery to appellant's counsel. (*See* Tr. Vol. II at 337-38; Appellant's Brief at 14-19. *See also* Tr. Vol. II at 296.) The record shows that the prosecutor and appellant's counsel were surprised by A.C.'s mid-trial revelation about the possible existence of more than six recordings, including potentially two more recordings she gave to law enforcement. (*See* Tr. Vol. II at 337-38; Tr. Vol. III at 438.) Yet, appellant's trial counsel did not move the trial court for any remedial action—mistrial, continuance, exclusion of evidence, or otherwise—based on Crim.R. 16 or *Brady* at that time.

{¶ 65} When the state moved to admit the six recordings as evidence the day after A.C. testified, appellant's trial counsel objected,

citing *Brady*. (*See* Tr. Vol. II at 437-38.) In response, the prosecutor represented that he had not been made aware of any other possible recordings until A.C. testified at trial. (Tr. Vol. III at 438.) Appellant's counsel did not refute this representation; instead, he requested a jury instruction concerning missing evidence, which is the subject of appellant's second assignment of error. (Tr. Vol. II at 438.)

{¶ 66} The trial court ultimately admitted the six recordings over the defense's objection, but suggested that if the defense "end[ed] up calling the detective or anything like that, that [issue relating to potentially withheld or destroyed evidence] could be explored as well." (Tr. Vol. II at 438-39.)

{¶ 67} During the defense's case-in-chief, appellant's trial counsel called Detective Haas as a witness. Detective Haas testified that Detective McGuire handled this portion of the investigation and she did not review or receive A.C.'s recordings. (Tr. Vol. III at 473-74.) And although Detective McGuire was subpoenaed for trial (May 28, 2021 Subpoena), neither the state nor defense counsel elected to call him as a witness.

### 3. Analysis

{¶ 68} Appellant argues in his first assignment of error that additional recordings of conversations he had with A.C. existed (at least at some point) and would have supported his testimony and weakened the inculpatory value of the six recordings played for the jury and admitted into evidence at trial.

{¶ 69} Appellant and A.C. both testified about having many in-person conversations after R.S. reported sexual abuse to police. (*See*, *e.g.*, Tr. Vol. III at 500-03, 528; Tr. Vol. II at 293-96.) Appellant testified that he repeatedly denied R.S.'s allegations during these conversations. (Tr. Vol. III at 517-22, 528-29, 534-36.) The recordings played for the jury did not, however, include adamant or unequivocal denials by appellant.

{¶ 70} During his testimony, Appellant claimed the recordings played for the jury depicted conversations that took place after A.C. had "been hammering" him for months about R.S.'s allegations and suggested what he said in those recordings was what he believed was necessary for "her to stop." (Tr. Vol. III at 518-19, 528-29.) Appellant described A.C. questioning him about R.S.'s allegations while threatening to harm herself with a razor on one occasion. (Tr. Vol. III at 520-21.) But that conversation was not among the six

played at trial, and it is unclear precisely what impact he purports that interaction had on any subsequent conversations. (*See* Tr. Vol. III at 520-21.) Appellant also proffered in his trial testimony that, when the inculpatory recordings were made, he was in a bad mindset and was desperate to see his children (which A.C. facilitated, on some occasions when they met). (Tr. Vol. III at 518, 520-22, 532-36.) At trial, appellant expressly denied engaging in any sexual acts with R.S., and speculated that his repeated denials of the allegations during conversations with A.C. would be reflected on the other possible recordings A.C. may have made. (Tr. Vol. III at 517-21, 522-23, 534-36.)

{¶ 71} Appellant's *Brady* claim fails, however, at its inception. Although he speculates about the nature of the conversations that would have been on other potential recordings that may have, at some point, existed, it is well-established that mere speculation—without more—is insufficient to support a claimed *Brady* violation. *See, e.g.*, *State v. Sullivan*, 10th Dist. No. 13AP-861, 2014-Ohio-1260, 2014 WL 1347100, ¶ 20, citing *State v. Moore*, 10th Dist. No. 11AP-1116, 2013-Ohio-3365, 2013 WL 3968166, ¶ 43, and *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678, ¶ 60. Everything appellant claims on appeal about possible recordings of conversations he had with A.C.—from the number, content, and whether the state knew (or should have known) about them—is based on speculation.

{¶ 72} A.C. testified she was not sure how many conversations she recorded, but conjectured "probably 100." (Tr. Vol. II at 337.) Some of those recordings, she testified, were lost because her "one phone burnt up after a few months of recording." (Tr. Vol. II at 296.) Nothing in the record indicates, however, precisely (or even approximately) how many recordings were lost as a result. If anything, the record suggests most of A.C.'s recordings were lost due to the malfunctioning of her phone. (*See* Tr. Vol. II at 337-38.)

{¶ 73} Appellant contends in his brief that "[A.C.] claims she provided at least two additional recordings to detectives." (Appellant's Brief at 17.) But that claim is itself a speculative extrapolation of her actual testimony, which is set forth, in relevant part, below:

> [DEFENSE:] And of those 100 -- or hundreds of recordings, you turned over six to the Columbus police, correct?
> [A.C.:] Actually, no, there are more. Like, there were more. I'm not sure why there's only six here.
> * * *

6

> [DEFENSE:] How many more were not turned over?
> [A.C.:] There's probably two more that weren't. Well, they should have been turned over. I don't know why they weren't.

(Tr. Vol. II at 337.)

Based on this testimony, it is not entirely clear whether A.C. meant there were two additional recordings in her possession that she did not turn over to police or that she gave two additional recordings to police that were not played by the state at trial. The defense did not attempt to clarify her testimony, and Detective Haas was not able to offer additional information because Detective McGuire took A.C.'s call and dealt with the recordings. (Tr. Vol. III at 473-74. *See also* Tr. Vol. II at 332, 340.)

{¶ 74} Moreover, Detective McGuire was not called to testify at trial. Thus, there is no testimony in the record from the detective who received and reviewed the recordings about the number and content of the recordings that appellant now argues on appeal were unconstitutionally withheld. And, of note, A.C. was not asked to describe the conversations she recorded but, for whatever reason, were not played at trial.

{¶ 75} Without some evidence beyond appellant's hypotheses—that additional recordings actually existed and contained material exculpatory evidence—appellant cannot prove the state violated *Brady*. As such, we find appellant failed to prove the recordings at issue would have provided material exculpatory evidence.

{¶ 76} Because the content of the possible additional recordings is unknown and only potentially useful, appellant must establish bad faith on the state's part to succeed with a due process claim. *See Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239, 878 N.E.2d 1 at ¶ 10; *Youngblood*, 488 U.S. at 57-58, 109 S.Ct. 333. The evidence appellant argues was unconstitutionally suppressed falls into three categories: (1) recordings in the possession of law enforcement that were not given to the defense; (2) recordings lost due to the malfunction of A.C.'s phone; and (3) recordings A.C. may have intentionally deleted.

{¶ 77} As to the first category, we reiterate that, as described above, appellant has not provided compelling proof that any of these recordings existed or were available to the state. It is true that the *Brady* rule "encompasses evidence 'known only to police investigators and not to the prosecutor.' " *Strickler*, 527 U.S. at 280-

7

81, 119 S.Ct. 1936, quoting *Kyles*, 514 U.S. at 438, 115 S.Ct. 1555. And, "[i]n order to comply with *Brady*, therefore, 'the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf * * *, including the police.' " *Id.*, quoting *Kyles* at 437, 115 S.Ct. 1555. But the record does not clearly establish that any additional recordings were, in fact, provided to law enforcement. Further, without evidentiary support or any legal argument, appellant contends that we should somehow infer bad faith by either the police or the prosecutor. We decline to speculate about malfeasance by the state when the defense did not adequately attempt to develop the record below by, for instance, calling Detective McGuire as a witness or attempting to clarify A.C.s testimony on this matter. Accordingly, the arguments appellant makes with respect to this first category of suppressed evidence are not well-taken.

{¶ 78} As to the second and third categories of suppressed evidence—lost or deleted recordings—appellant does not point to any authority for the proposition that *Brady* requires the state to secure and ensure the preservation of evidence not in its possession from third parties. We recognize A.C. claimed Detective Haas asked her to start recording her conversations with appellant. (*See, e.g.*, Tr. Vol. II at 294, 327, 334.) And while Detective Haas had no recollection of telling A.C. to do this, it is true that Detective Haas acknowledged "it would not be unusual" for her to endorse a witness's offer to try to obtain recorded admissions from a suspect in a case such as this one. (Tr. Vol. III at 466-67.) But we do not find this evidence sufficiently establishes that A.C. was acting on behalf of the state when she recorded her conversations with appellant.

{¶ 79} Because this case involves the potential disposal of evidence by a third-party who was not acting on behalf of or at the direction of the state, it is difficult for appellant to connect the destruction of evidence to bad faith on the part of the state. Nothing in the record suggests the state was even aware of the recordings lost on A.C.'s phone or that A.C. may have deleted. "Without state action, the panoply of constitutional protections generally does not apply." *State v. Fornshell*, 1st Dist. No. C-180267, 2021-Ohio-674, 2019 WL 11816608, ¶ 11, citing *Bouquett v. St. Elizabeth Corp.*, 43 Ohio St.3d 50, 53, 538 N.E.2d 113 (1989) (appellee required to show state action to "warrant the constitutional protection of due process").

{¶ 80} Our determination that A.C. was not a state actor is fatal to appellant's arguments concerning lost or destroyed evidence. But,

even if she were a state actor, his arguments are without merit. As to the recordings lost when A.C.'s phone malfunctioned (the second category), appellant offers no explanation in his brief as to how A.C. acted in bad faith. Nor do we believe the record suggests she did. With regard to the third category, appellant contends in his brief that A.C. "expressly stated she deleted recordings to prevent [appellant] from gaining access to them." (Appellant's Brief at 19, citing Tr. Vol. II at 296.) But he mischaracterizes her testimony. A.C. stated that she first downloaded the recordings to her daughter's phone *before* deleting them from her own phone. (Tr. Vol. II at 296.) A.C. was not asked if she ever intentionally deleted recordings before such transfer occurred.

{¶ 81} Without a showing that the evidence at issue was materially exculpatory or that the state acted in bad faith—let alone a showing of the existence of any suppressed evidence or state action—we overrule appellant's first assignment of error.

*State v. Padilla-Torres*, 2023-Ohio-2035 (Ohio App. 10th Dist. Jun. 20, 2023).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86 (2011); *Cunningham v. Shoop,* 23 F.4th 636, 650 (6th Cir. 2022); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000); *Hendrix v. Palmer*, 893 F.3d 906, 917 (6th Cir. 2018). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Petitioner has not shown either that the Tenth District's decision is an objectively unreasonable application of *Brady* or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. In overruling Petitioner's *Miranda* objection to the content of recordings made by A.C., the court determined Petitioner was not in

custody and A.C. was not a state actor.  *A fortiori*, evidence in A.C.'s sole possession could not have been *Brady* material.  The recordings known to exist and which were played to the jury were in fact turned over in discovery. If the posited additional two recordings were turned over, the relevant witness would have been Detective McGuire who was successfully subpoenaed, but never called to the stand.  Thus the Tenth District's conclusion that Petitioner's assertion of withheld *Brady* material was speculative is fully supported by the record.  On that basis, the Motion for Discovery is denied.

Additionally, Petitioner apparently seeks the discovery in order to add to the record for determining the merits of his *Brady* claim.  But in deciding whether the Tenth District's decision was reasonable, this Court is limited to reviewing the record before that court.  *Cullen v. Pinholster*, 563 U.S. 170 (2011).  *Pinholster* bars a federal court "from admitting new evidence upon which to assess the reasonableness of a state court's constitutional analysis." *Upshaw v. Stephenson*, 97 F. 4th 365, 372 (6th Cir. 2024), quoting *Mitchell v. Genovese*, 974 F.3d 638, 647 (6th Cir. 2020).  Although *Pinholster* itself involved evidentiary hearings, it has been extended to proposed expansions of the record under Habeas Rule 7.  *Moore v. Mitchell*, 708 F.3d 760, 780-784 (6th Cir. 2013).  *Moore* also holds this restriction applies even if the record is expanded on joint motion.  There is no good cause for discovery which cannot produce evidence which the Court can consider.  *Pinholster* precludes the discovery Petitioner seeks.

**Conclusion**

For the foregoing reasons, the Court concludes there is not good cause to order the sought discovery.  Petitioner's Motion for Discovery is DENIED.

10

IT IS SO ORDERED.


September 5, 2025.

s/ *Michael R. Merz*
United States Magistrate Judge
