# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION AT COLUMBUS

OMAR E. PADILLA-TORRES,

                    Petitioner,        :              Case No. 2:24-cv-4274

     - vs -                                           District Judge Algenon L. Marbley
                                                      Magistrate Judge Michael R. Merz

WARDEN, London Correctional
   Institution,

                    Respondent.    :

## REPORT AND RECOMMENDATIONS ON THE MERITS

This habeas corpus case, brought *pro se* by Petitioner Omar Padilla-Torres under 28 U.S.C. § 2254, is before the Court for a report and recommendations on the merits. The relevant filings are the Petition (ECF No. 1), the State Court Record (ECF No. 6), the Return of Writ (ECF No. 8), and Petitioner's Reply (ECF No. 12).

Petitioner previously sought leave to amend (ECF No. 10). The undersigned denied leave, subject to renewal with an attached proposed amended petition which Petitioner said he had already prepared (ECF No. 18). However, Petitioner has not taken advantage of that offer, so there is no amended petition before the Court. Petitioner has also objected to the transfer of the Magistrate Judge reference in this case (ECF No. 20), but on a basis not supported by law so the case continues to be referred to the undersigned (See ECF No. 21).

1

**Litigation History**

On November 8, 2018, a Franklin County Grand Jury returned a thirteen count indictment charging Petitioner with three counts of rape (two counts pertaining to a child under ten, one count pertaining to a child under thirteen), one count of attempted rape, six counts of sexual battery, and three counts of unlawful sexual conduct with a minor, all offenses involving Petitioner's minor stepdaughter, R.S., within six different timeframes between 2012 and 2018 (Indictment, State Court Record, ECF No. 6, Ex. 1).  A trial jury found Petitioner not guilty on counts one through four, but guilty of the remaining counts.  After merging some of the convictions under Ohio Revised Code § 2941.25, the trial court sentenced Petitioner to an aggregate sentence of fifty years to life (State Court Record, ECF No. 6, Ex. 6).

Petitioner appealed to the Ohio Court of Appeals for the Tenth District which affirmed the conviction.  *State v. O.E.P-T[1]*, 218 N.E.3d 237, 2023-Ohio-2035 (Ohio App. 10th Dist. Jun. 20, 2023).  The Oho Supreme Court declined to exercise jurisdiction over a further appeal.  *State v. O.E.P-T*, 172 Ohio St.3d 1462, 225 N.E.3d 1021 (Table), 2024-Ohio-163 (Jan. 23, 2024).

Petitioner next filed[2] his Petition in this Court, pleading the following claims:

> **Ground One:** The cumulative effect of the State's failure to provide certain discoverable evidence resulted in a violation of Mr. Padilla-Torres [sic] right to due process required by the U.S. and Ohio Constitutions.
>
> **Supporting Facts:** There was favorable evidence that was not provided to the defendant. As the brief relates 2 categories of suppressed evidence was identified by the Petitioner. These recordings are favorable and potentially useful to Padilla-Torres.

---

[1] Cited here as it appears in the Northeast Third Reporter.  No reason is given in the opinion for not disclosing Petitioner's name.

[2] Respondent concedes the Petition was filed within one year of the Ohio Supreme Court's decision and is thus timely under 28 U.S.C. § 2244(d)(1)(Return, ECF No. 8, PageID 1164).

**Ground Two**: The Court wrongly denied jury instructions offered by the Petitioner and failed to properly instruct the jury about missing evidence violating Appellant's right to due process and equal protections as required by the U.S. and Ohio Constitutions.

**Supporting Facts**: The Petitioner supplied the court with a set of instructions concerning missing evidence and the failure to disclose evidence. The trial court failed to give the requested instruction.

**Ground Three:** The Petitioner was provided the ineffective assistance of counsel when trial counsel failed to object to 404(b) evidence and failed to request other acts instruction.

**Supporting Facts:** Counsel failed to object to the admission of 404(B) evidence. Counsel failed to object to the jury receiving a child's statement when that was clearly prohibited. Counsel failed to request other acts instruction. This left the evidence uncontested. He also failed to object to the entire National Report Instruction. [sic]

**Ground Four:** Petitioner was denied due process and equal protection of the law when he was convicted and sentenced on insufficient evidence required by the U.S. and Ohio Constitutions.

**Supporting Facts:** The jury could not have found each element of the offenses was proven beyond a reasonable doubt. The most recent offenses, counts one through four, the petitioner was acquitted. The Petitioner was then put to the task of disproving the remaining allegations, not the State prove the allegations. [sic]

**Ground Five:** Trial court erred to the prejudice of the Appellant by improperly sentencing him to maximum and consecutive prison terms.

**Supporting Facts:** The trial court failed to state the statutory language on the record or in the entry. No findings were made to support consecutive sentences.

(Petition, ECF No. 1, PageID 5-11).

In the Return of Writ, Respondent asserts that portion of the Third Ground for Relief complaining of trial counsel's failure to object to testimony by a child is procedurally defaulted (Return, ECF No. 8, PageID 1168). Otherwise Respondent defends on the merits, asserting either

that the Tenth District's decision is neither contrary to nor an objectively unreasonable application of clearly established Supreme Court precedent or that a particular claim is not cognizable in federal habeas corpus. Respondent also asserts Ground One does not plead sufficient facts to satisfy Rule 2 of the Rules Governing § 2254 Cases ("Habeas Rules"). *Id.* at PageID 1172, *et seq.*

In his Reply, Petitioner asserts that this Court's issuance of an order to answer satisfies the Rule 2 requirement (Reply, ECF No. 12, PageID 1241-44). He asserts he has not procedurally defaulted the portion of Ground Three complained of by Respondent. He states "Petitioner was clearly providing facts that amount to hearsay in order to support the third other acts prong. He still only contends that his counsel was ineffective for failing to object in the three ways stated in his ground for relief." *Id.* at PageID 1245-46. However, the "three ways" are pleaded in the "Supporting Facts" for Ground Three, not in the statement of claim itself. This Report will analyze Ground Three as if it were making three sub-claims of ineffective assistance of trial counsel.

Petitioner's Reply argues the merits of Ground One. He notes that Respondent's argument as to Ground Two is that the claim is not cognizable in habeas (Reply, ECF No. 12, PageID 1256). He insists, however, on the application of spoliation precedent to this Ground for Relief. *Id.* at PageID 1256-61.

As to Ground Three Petitioner argues the general inadmissibility of "other acts" evidence and of the Nationwide Report (Reply, ECF No. 12, PageID 1263-65). No separate argument is made as to failure to object to a child's testimony. As to the insufficiency of evidence claim in Ground Four, Petitioner asserts the lack of physical evidence and the unreliability of the victim's testimony. *Id.* at PageID 1266-69. As to Ground Five, Petitioner relies on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004), as interpreted by the Ohio Supreme Court in *State v. Foster*, 109 Ohio St. 3d 1 (2006).

# Analysis

**General Limitations on Federal Habeas Corpus**

Federal habeas corpus courts are limited to considering asserted violations of the United States Constitution that resulted in a habeas petitioner's conviction.  28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983).   "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar, J. concurring).

As it pertains to this case, the limitations mean this Court cannot consider claims that the conviction violates the Ohio Constitution or Ohio procedural law (e.g., rules of evidence or requirements for jury instructions) unless those state court acts also violate the United States Constitution.

**Ground One:  Failure to Disclose Exculpatory Evidence**

In his First Ground for Relief, Petitioner claims the State failed to produce exculpatory

evidence which it was bound to disclose under *Brady v. Maryland*, 373 U.S. 83 (1963).  The Tenth

District Court of Appeals made the following relevant factual findings on direct appeal:

### 7. Possible Additional Recordings Not Produced or Provided

{¶ 54} During trial, A.C. testified that she turned over more than six recordings to CPD, and speculated there may have been at least two more. (Tr. Vol. II at 337-38.) Detective Haas testified she had no knowledge of the number or content of the recorded conversations A.C. gave to CPD because Detective McGuire received and reviewed the recordings and took over that part of the case. (Tr. Vol. III at 472-74.) A.C. explained that she only met Detective McGuire once and R.S. "did most of the communication with him." (*See* Tr. Vol. II at 340.) Although he was under subpoena (May 28, 2021 Subpoena), neither party called Detective McGuire to testify at trial.

{¶ 55} The state and defense counsel both indicated they were surprised by A.C.'s mid-trial revelation about the existence of more than six recorded conversations with appellant. (*See* Tr. Vol. II at 337-38; Tr. Vol. III at 438.) A.C. testified that some of the recordings were lost when her phone malfunctioned, but she did not indicate how many. (Tr. Vol. II at 296, 337-38.) She also seemed to suggest that recordings she did not believe were "usable" were not preserved or turned over to police. (*See* Tr. Vol. II at 296.) However, neither the state nor defense counsel asked A.C. to clarify what she meant by "usable" or how many of her recorded conversations she believed were not "usable," and therefore, not preserved.

{¶ 56} Appellant testified that he repeatedly denied R.S.'s allegations during conversations with A.C., which he suggested would be on other recordings not provided or preserved. (*See* Tr. Vol. III at 517-19.) He claimed the conversations in the six recordings played for the jury occurred in late October 2018, after A.C. had been "hammering [him] about these things" for weeks and shortly after his brother died. (Tr. Vol. III at 517-19, 528-29.) Appellant also claimed he made the inculpatory statements (admissions and failures to deny) on those six recordings in an attempt to stop A.C.'s repeated questioning. (Tr. Vol. III at 518-21.) Appellant further alleged he made these inculpatory statements on one occasion after A.C. threatened to harm herself. (Tr. Vol. III at 518-21.) This threat is not reflected in any of the six recordings played at trial, however, and A.C. was never questioned about this claim.

*State v. O.E.P-T, supra.*

6

The Tenth District then decided Petitioner's First Assignment of Error as follows:

¶ 60} In his first assignment of error, appellant argues the state suppressed evidence—recordings of conversations between A.C. and appellant—in violation of his constitutional right to due process and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). (Appellant's Brief at 14-19.) He explains why he believes additional recordings were withheld, destroyed, or lost and suggests the trial court erred in admitting the six recordings over defense counsel's objection under *Brady*.

## 1. Controlling Law

{¶ 61} The crux of appellant's arguments begins with *Brady*, wherein the Supreme Court of the United States held that due process requires the prosecution to provide to the defense any evidence favorable to the accused that is material either to guilt or punishment. 373 U.S. at 83, 87-88, 83 S.Ct. 1194. *See also Smith v. Cain*, 565 U.S. 73, 75, 132 S.Ct. 627, 181 L.Ed.2d 571 (2012) (a criminal defendant's due process rights are violated when the state "withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment"). The Supreme Court subsequently held that such obligation includes evidence affecting the credibility of a prosecution witness, including impeachment evidence. *See Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). A *Brady* violation occurs when: (1) the state suppresses evidence, either willfully or inadvertently; (2) the evidence is favorable to the defendant as either exculpatory (material) or impeachment evidence; and (3) prejudice has resulted to the defendant. *State v. Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470, ¶ 19, citing *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). Prejudice occurs when there is a reasonable probability that the result of the trial would have been different had the evidence been disclosed to the defense. *Id.*, citing *Kyles v. Whitley*, 514 U.S. 419, 433-34, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), quoting *United States v. Bagley*, 473 U.S. 667, 678, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

{¶ 62} If a defendant cannot demonstrate that undisclosed or lost evidence is materially exculpatory, then, to establish a due process violation, the defendant must demonstrate the police or prosecution lost, destroyed, or failed to preserve the "potentially useful" evidence in bad faith. *State v. Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239, 878 N.E.2d 1, ¶ 10; *Arizona v. Youngblood*, 488 U.S. 51, 57-58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). "The term 'bad

faith' generally implies something more than bad judgment or negligence." (Citations omitted.) *State ex rel. Horton v. Kilbane*, 167 Ohio St.3d 413, 2022-Ohio-205, 194 N.E.3d 288, ¶ 31. It "imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive[,] or ill will partaking of the nature of fraud." (Citations omitted.) *Id. See also State v. Wolf*, 154 Ohio App.3d 293, 2003-Ohio-4885, 797 N.E.2d 109, ¶ 14 (7th Dist.), quoting *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 276, 452 N.E.2d 1315 (1983). A continuing cavalier attitude toward preservation of evidence with an abundantly apparent evidentiary value can, under certain facts and circumstances, amount to "bad faith." *See*, *e.g.*, *State v. Durnwald*, 163 Ohio App.3d 361, 2005-Ohio-4867, 837 N.E.2d 1234, ¶ 31-36 (6th Dist.); *State v. Benson*, 152 Ohio App.3d 495, 2003-Ohio-1944, 788 N.E.2d 693, ¶ 14-15 (1st Dist.).

## 2. Trial court proceedings related to potentially missing recordings

{¶ 63} Although trial counsel knew about the six recorded conversations before trial began, neither the prosecutor nor appellant's defense counsel knew A.C. would testify she recorded these conversations at the request of law enforcement. (*See*, *e.g.*, Tr. Vol. II at 299; Tr. Vol. III at 438.) After A.C. testified that Detective Haas asked her to record her conversations with appellant, appellant's trial counsel moved for either a continuance or a mistrial pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). (Tr. Vol. II at 299-302.) These oral motions were predicated on the argument that such statements were unconstitutionally obtained by a third-party actor on behalf of the state because "[n]o *Miranda* rights were given when these statements were elicited from [appellant]." (Tr. Vol. II at 300.) Had such information been known prior to trial, appellant's counsel argued, the defense would have moved to suppress the recordings before trial commenced. (Tr. Vol. II at 300.) In denying those motions, the trial court noted that nothing in the record suggested appellant's statements to A.C. were obtained while he was "in custody," which is necessary for purposes of *Miranda*. (Tr. Vol. II at 301.) *See*, *e.g.*, *Cleveland v. Oles*, 152 Ohio St.3d 1, 2017-Ohio-5834, 92 N.E.3d 810, ¶ 9-24. Appellant does not challenge that ruling on appeal.

{¶ 64} After the six recorded conversations were played at trial (without objection), A.C. testified on cross-examination that, between August and October 2018, she recorded "probably 100" conversations with appellant. (Tr. Vol. II at 335-37. *See also* Tr.

Vol. II at 295-96.) Some of those recordings were lost when her phone malfunctioned, while others (beyond the six played at trial) may have been deleted by her, not turned over to police, or provided to police but not produced in discovery to appellant's counsel. (*See* Tr. Vol. II at 337-38; Appellant's Brief at 14-19. *See also* Tr. Vol. II at 296.) The record shows that the prosecutor and appellant's counsel were surprised by A.C.'s mid-trial revelation about the possible existence of more than six recordings, including potentially two more recordings she gave to law enforcement. (*See* Tr. Vol. II at 337-38; Tr. Vol. III at 438.) Yet, appellant's trial counsel did not move the trial court for any remedial action—mistrial, continuance, exclusion of evidence, or otherwise—based on Crim.R. 16 or *Brady* at that time.

{¶ 65} When the state moved to admit the six recordings as evidence the day after A.C. testified, appellant's trial counsel objected, citing *Brady*. (*See* Tr. Vol. II at 437-38.) In response, the prosecutor represented that he had not been made aware of any other possible recordings until A.C. testified at trial. (Tr. Vol. III at 438.) Appellant's counsel did not refute this representation; instead, he requested a jury instruction concerning missing evidence, which is the subject of appellant's second assignment of error. (Tr. Vol. II at 438.)

{¶ 66} The trial court ultimately admitted the six recordings over the defense's objection, but suggested that if the defense "end[ed] up calling the detective or anything like that, that [issue relating to potentially withheld or destroyed evidence] could be explored as well." (Tr. Vol. II at 438-39.)

{¶ 67} During the defense's case-in-chief, appellant's trial counsel called Detective Haas as a witness. Detective Haas testified that Detective McGuire handled this portion of the investigation and she did not review or receive A.C.'s recordings. (Tr. Vol. III at 473-74.) And although Detective McGuire was subpoenaed for trial (May 28, 2021 Subpoena), neither the state nor defense counsel elected to call him as a witness.

### 3. Analysis

{¶ 68} Appellant argues in his first assignment of error that additional recordings of conversations he had with A.C. existed (at least at some point) and would have supported his testimony and weakened the inculpatory value of the six recordings played for the jury and admitted into evidence at trial.

9

{¶ 69} Appellant and A.C. both testified about having many in-person conversations after R.S. reported sexual abuse to police. (*See*, *e.g.*, Tr. Vol. III at 500-03, 528; Tr. Vol. II at 293-96.) Appellant testified that he repeatedly denied R.S.'s allegations during these conversations. (Tr. Vol. III at 517-22, 528-29, 534-36.) The recordings played for the jury did not, however, include adamant or unequivocal denials by appellant.

{¶ 70} During his testimony, Appellant claimed the recordings played for the jury depicted conversations that took place after A.C. had "been hammering" him for months about R.S.'s allegations and suggested what he said in those recordings was what he believed was necessary for "her to stop." (Tr. Vol. III at 518-19, 528-29.) Appellant described A.C. questioning him about R.S.'s allegations while threatening to harm herself with a razor on one occasion. (Tr. Vol. III at 520-21.) But that conversation was not among the six played at trial, and it is unclear precisely what impact he purports that interaction had on any subsequent conversations. (*See* Tr. Vol. III at 520-21.) Appellant also proffered in his trial testimony that, when the inculpatory recordings were made, he was in a bad mindset and was desperate to see his children (which A.C. facilitated, on some occasions when they met). (Tr. Vol. III at 518, 520-22, 532-36.) At trial, appellant expressly denied engaging in any sexual acts with R.S., and speculated that his repeated denials of the allegations during conversations with A.C. would be reflected on the other possible recordings A.C. may have made. (Tr. Vol. III at 517-21, 522-23, 534-36.)

{¶ 71} Appellant's *Brady* claim fails, however, at its inception. Although he speculates about the nature of the conversations that would have been on other potential recordings that may have, at some point, existed, it is well-established that mere speculation—without more—is insufficient to support a claimed *Brady* violation. *See, e.g.*, *State v. Sullivan*, 10th Dist. No. 13AP-861, 2014-Ohio-1260, 2014 WL 1347100, ¶ 20, citing *State v. Moore*, 10th Dist. No. 11AP-1116, 2013-Ohio-3365, 2013 WL 3968166, ¶ 43, and *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678, ¶ 60. Everything appellant claims on appeal about possible recordings of conversations he had with A.C.—from the number, content, and whether the state knew (or should have known) about them—is based on speculation.

{¶ 72} A.C. testified she was not sure how many conversations she recorded, but conjectured "probably 100." (Tr. Vol. II at 337.) Some of those recordings, she testified, were lost because her "one phone burnt up after a few months of recording." (Tr. Vol. II at 296.)

10

Nothing in the record indicates, however, precisely (or even approximately) how many recordings were lost as a result. If anything, the record suggests most of A.C.'s recordings were lost due to the malfunctioning of her phone. (*See* Tr. Vol. II at 337-38.)

{¶ 73} Appellant contends in his brief that "[A.C.] claims she provided at least two additional recordings to detectives." (Appellant's Brief at 17.) But that claim is itself a speculative extrapolation of her actual testimony, which is set forth, in relevant part, below:

> [DEFENSE:] And of those 100 -- or hundreds of recordings, you turned over six to the Columbus police, correct?
>
> [A.C.:] Actually, no, there are more. Like, there were more. I'm not sure why there's only six here.
> * * *
>
> [DEFENSE:] How many more were not turned over?
>
> [A.C.:] There's probably two more that weren't. Well, they should have been turned over. I don't know why they weren't.

(Tr. Vol. II at 337.) Based on this testimony, it is not entirely clear whether A.C. meant there were two additional recordings in her possession that she did not turn over to police or that she gave two additional recordings to police that were not played by the state at trial. The defense did not attempt to clarify her testimony, and Detective Haas was not able to offer additional information because Detective McGuire took A.C.'s call and dealt with the recordings. (Tr. Vol. III at 473-74. *See also* Tr. Vol. II at 332, 340.)

{¶ 74} Moreover, Detective McGuire was not called to testify at trial. Thus, there is no testimony in the record from the detective who received and reviewed the recordings about the number and content of the recordings that appellant now argues on appeal were unconstitutionally withheld. And, of note, A.C. was not asked to describe the conversations she recorded but, for whatever reason, were not played at trial.

{¶ 75} Without some evidence beyond appellant's hypotheses—that additional recordings actually existed and contained material exculpatory evidence—appellant cannot prove the state violated *Brady*. As such, we find appellant failed to prove the

11

recordings at issue would have provided material exculpatory evidence.

{¶ 76} Because the content of the possible additional recordings is unknown and only potentially useful, appellant must establish bad faith on the state's part to succeed with a due process claim. *See Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239, 878 N.E.2d 1 at ¶ 10; *Youngblood*, 488 U.S. at 57-58, 109 S.Ct. 333. The evidence appellant argues was unconstitutionally suppressed falls into three categories: (1) recordings in the possession of law enforcement that were not given to the defense; (2) recordings lost due to the malfunction of A.C.'s phone; and (3) recordings A.C. may have intentionally deleted.

{¶ 77} As to the first category, we reiterate that, as described above, appellant has not provided compelling proof that any of these recordings existed or were available to the state. It is true that the *Brady* rule "encompasses evidence 'known only to police investigators and not to the prosecutor.' " *Strickler*, 527 U.S. at 280-81, 119 S.Ct. 1936, quoting *Kyles*, 514 U.S. at 438, 115 S.Ct. 1555. And, "[i]n order to comply with *Brady*, therefore, 'the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf * * *, including the police.' " *Id.*, quoting *Kyles* at 437, 115 S.Ct. 1555. But the record does not clearly establish that any additional recordings were, in fact, provided to law enforcement. Further, without evidentiary support or any legal argument, appellant contends that we should somehow infer bad faith by either the police or the prosecutor. We decline to speculate about malfeasance by the state when the defense did not adequately attempt to develop the record below by, for instance, calling Detective McGuire as a witness or attempting to clarify A.C.s testimony on this matter. Accordingly, the arguments appellant makes with respect to this first category of suppressed evidence are not well-taken.

{¶ 78} As to the second and third categories of suppressed evidence—lost or deleted recordings—appellant does not point to any authority for the proposition that *Brady* requires the state to secure and ensure the preservation of evidence not in its possession from third parties. We recognize A.C. claimed Detective Haas asked her to start recording her conversations with appellant. (*See, e.g.*, Tr. Vol. II at 294, 327, 334.) And while Detective Haas had no recollection of telling A.C. to do this, it is true that Detective Haas acknowledged "it would not be unusual" for her to endorse a witness's offer to try to obtain recorded admissions from a suspect in a case such as this one. (Tr. Vol. III at 466-67.) But we do not

12

find this evidence sufficiently establishes that A.C. was acting on behalf of the state when she recorded her conversations with appellant.

{¶ 79} Because this case involves the potential disposal of evidence by a third-party who was not acting on behalf of or at the direction of the state, it is difficult for appellant to connect the destruction of evidence to bad faith on the part of the state. Nothing in the record suggests the state was even aware of the recordings lost on A.C.'s phone or that A.C. may have deleted. "Without state action, the panoply of constitutional protections generally does not apply." *State v. Fornshell*, 1st Dist. No. C-180267, 2021-Ohio-674, 2019 WL 11816608, ¶ 11, citing *Bouquett v. St. Elizabeth Corp.*, 43 Ohio St.3d 50, 53, 538 N.E.2d 113 (1989) (appellee required to show state action to "warrant the constitutional protection of due process").

{¶ 80} Our determination that A.C. was not a state actor is fatal to appellant's arguments concerning lost or destroyed evidence. But, even if she were a state actor, his arguments are without merit. As to the recordings lost when A.C.'s phone malfunctioned (the second category), appellant offers no explanation in his brief as to how A.C. acted in bad faith. Nor do we believe the record suggests she did. With regard to the third category, appellant contends in his brief that A.C. "expressly stated she deleted recordings to prevent [appellant] from gaining access to them." (Appellant's Brief at 19, citing Tr. Vol. II at 296.) But he mischaracterizes her testimony. A.C. stated that she first downloaded the recordings to her daughter's phone *before* deleting them from her own phone. (Tr. Vol. II at 296.) A.C. was not asked if she ever intentionally deleted recordings before such transfer occurred.

{¶ 81} Without a showing that the evidence at issue was materially exculpatory or that the state acted in bad faith—let alone a showing of the existence of any suppressed evidence or state action—we overrule appellant's first assignment of error.

*Id.*

Respondent asserts Ground One should be dismissed because it is not sufficiently pleaded to comply with Rule 2 of the Rules Governing § 2254 Cases. Petitioner responds that the Court's issuance of an order to answer precludes this defense (Reply, ECF No. 12, PageID 1241, *et seq.*). The Court declines to decide as a general matter that issuance of an order to answer precludes a

claim that a Petition does not satisfy Rule 2.  In this particular case the Petition and Reply as supplemented by the state court proceedings has made Ground One sufficiently plain to allow the Warden to respond.  The Petition should not be dismissed on that basis.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86 (2011); *Cunningham v. Shoop,* 23 F.4th 636, 650 (6th Cir. 2022); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000); *Hendrix v. Palmer*, 893 F.3d 906, 917 (6th Cir. 2018).  Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

The Tenth District found that A.C. was not a state actor and that finding was "fatal" (supra at ¶ 80) to Petitioner's *Brady* claim. Padilla-Torres has not persuaded the Magistrate Judge that this was an unreasonable determination of the facts.  A.C. undoubtedly had a strong animus against Petitioner:  the victim was her daughter.  But that did not make her a state actor.  As the Tenth District also held, even if she had been a state actor, there was no showing she had destroyed evidence in bad faith, a necessary finding with destroyed evidence.  See *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988).

Petitioner's Reply argues issues of credibility as to both A.C. and the victim, R.S.  But credibility issues are for the jury to decide.  Petitioner also asks the Court to use its "common sense" to infer that the two recordings A.C. says she turned over to the police[3] but which were not

---

[3] It is undisputed that the first either the prosecutor or defense counsel heard about these recordings was during A.C.'s trial testimony.

produced in discovery are favorable to him. But this claim is as speculative when made in this Court as it was in the state courts.

The Tenth District decision on Petitioner's *Brady* claim is entitled to deference under both 28 U.S.C. § 2254(d)(1) and (d)(2). Ground One should therefore be dismissed with prejudice.


**Ground Two: Unconstitutional Jury Instructions**

In his Second Ground for Relief, Petitioner asserts the trial judge failed to give jury instructions about missing evidence which Petitioner requested, in violation of both the Due Process and Equal Protection Clauses of the Fourteenth Amendment and parallel guarantees in the Ohio Constitution. For reasons given above, the Court declines to consider the asserted Ohio constitutional violations.

The Tenth District Court of Appeals considered this claim as Petitioner's second assignment of error and decided it as follows:

> {¶ 82} In his second assignment of error, appellant contends the trial court erred when it denied his request for a jury instruction on the adverse inference a jury is permitted to draw from the recordings the state may have not provided to defense counsel in discovery. Those arguments are not well-taken.
>
> **1. Controlling Law and Standard of Review**
>
> {¶ 83} The purpose of jury instructions is to properly guide the jury in deciding questions of fact based on the applicable substantive law. Thus, a trial court must give jury instructions that are relevant and necessary for the jury to weigh the evidence and discharge its duty as fact finder. *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus. In fact, in a criminal case, prejudicial error is found where a court fails to give an instruction that is pertinent to the case, states the law correctly, and is not covered by the general charge. *State v. Sneed*, 63 Ohio St.3d 3, 9, 584 N.E.2d 1160 (1992); *State v. Angel*, 10th Dist. No. 19AP-771, 2021-Ohio-4322, 2021 WL 5853788, ¶ 67, quoting *State v. Joy*, 74

Ohio St.3d 178, 181, 657 N.E.2d 503 (1995). Although a trial court "has broad discretion to decide how to fashion jury instructions," such instructions must "present a correct, pertinent statement of the law that is appropriate to the facts" of the case. *State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, 29 N.E.3d 939, ¶ 46, citing *State v. Griffin*, 141 Ohio St.3d 392, 2014-Ohio-4767, 24 N.E.3d 1147, ¶ 5; *State v. Lessin*, 67 Ohio St.3d 487, 493, 620 N.E.2d 72 (1993). No purpose is served by giving instructions on law that does not apply to the facts and circumstances of the case.

{¶ 84} We review a trial court's decision to deny requested jury instructions for an abuse of discretion. *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989); *State v. Robinson*, 10th Dist. No. 17AP-853, 2019-Ohio-558, 2019 WL 645023, ¶ 30. An abuse of discretion occurs when the trial court's decision was unreasonable, arbitrary, or unconscionable. *See, e.g., State v. Brown*, 10th Dist. No. 22AP-38, 2022-Ohio-4073, 2022 WL 16947402, ¶ 19, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "A court abuses its discretion when a legal rule entrusts a decision to a judge's discretion and the judge's exercise of that discretion is outside of the legally permissible range of choices." *State v. Hackett*, 164 Ohio St.3d 74, 2020-Ohio-6699, 172 N.E.3d 75, ¶ 19. An abuse of discretion may also be found where a trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15 (8th Dist.). *See also New Asian Super Mkt. v. Jiahe Weng*, 10th Dist. No. 17AP-207, 2018-Ohio-1248, 110 N.E.3d 131, ¶ 16.

## 2. Analysis

{¶ 85} Appellant timely filed his request for an adverse inference instruction. (Aug. 5, 2021 Defendant's Proposed Jury Instruction.) Before closing arguments, his trial counsel presented argument as to why the requested instruction was warranted. (Tr. Vol. III at 539-43.) After closing arguments, the trial court formally denied the requested instruction. (Tr. Vol. IV at 593.) Appellant's trial counsel then objected to that decision on the record. (Tr. Vol. IV at 593.)

{¶ 86} An adverse inference may arise where a party who has control of the evidence in question fails, without satisfactory explanation, to provide the evidence to another party. *See, e.g., Poseidon Environmental Servs., Inc. v. Nu Way Indus. Waste Mgt., LLC*, 7th Dist. No. 16 MA 0083, 2017-Ohio-9407, 102 N.E.3d 1145, ¶ 18, citing *Vidovic v. Hoynes*, 11th Dist.

16

No. 2014-L-054, 2015-Ohio-712, 29 N.E.3d 338, ¶ 78, citing *Schwaller v. Maguire*, 1st Dist. No. C-02055, 2003-Ohio-6917, 2003 WL 22976339, ¶ 24. In that situation, a jury is permitted to draw an inference that would be unfavorable to the party who has failed to produce the evidence in question. *See id.* Before giving such instruction to a jury, however, Ohio courts typically require a strong showing of malfeasance—or, at least, gross neglect. *See id.*

{¶ 87} As the state notes, the adverse inference instruction is generally applied in civil cases. (*See* Appellee's Brief at 14-15.) And this makes sense because parties in civil cases have equal discovery burdens and fewer constitutional protections than criminal defendants. In arguing this instruction should be extended to criminal cases, appellant cites as support a single case from another appellate district: *State v. Blankenship*, 9th Dist. No. 2815, 1994 WL 510464 (Sept. 21, 1994). (Appellant's Brief at 23.)

{¶ 88} In *Blankenship*, the Ninth District Court of Appeals affirmed the trial court's refusal to give a similar instruction in a criminal case. *Id.* at *11-12. The defendant requested the adverse inference instruction because the state had physical evidence in its custody (ski mask and duffle bag) that it did not present to the jury. *Id.* During closing arguments, defense counsel was permitted to imply that such evidence would have been damaging to the state's case had it been presented. *Id.* But, the trial court refused to specifically instruct the jury that defense counsel's implication was appropriate. *Id.* at *12. Reviewing that refusal, the *Blankenship* court noted that defense counsel's closing arguments "were not evidence that could be considered by the jury" and "[t]here was no need for a specific instruction informing the jury that defendant's counsel's argument was not inappropriate." *Id.* at *13.

{¶ 89} Appellant contends that because the Ninth District did not expressly find such instruction to be wholly improper in criminal cases, the trial court erred in refusing to give that instruction in this case. This argument is not well-taken. The *Blankenship* court did not rule upon whether the adverse inference instruction applies in criminal cases because it found the requested instruction was not necessary under the facts and circumstances of that case. The court's silence on the applicability of this instruction to criminal cases does not, however, equate to an endorsement of such application.

{¶ 90} But beyond the failure to provide legal authority in support of this claim, and assuming an adverse inference instruction could be appropriate in criminal cases, we do not believe appellant

adequately established the factual predicate to warrant such instruction anyway. The record does not establish that recordings beyond the six played for the jury were ever in the state's control. Indeed, appellant's trial counsel never claimed the prosecutor had additional recordings that simply were not turned over to the defense. (Tr. Vol. II at 299.) And, the prosecutor denied on the record that he did. (Tr. Vol. III at 438.) At most, the record suggests additional recordings *might* have been lost or deleted by A.C., or provided to a detective (who was not called to testify at trial) but not given to the prosecutor. Setting aside appellant's failure to adequately establish whether such evidence existed, appellant is unable to make a showing of malfeasance or gross neglect on the part of the prosecutor to warrant this instruction. Accordingly, we expressly decline to opine on whether an adverse inference instruction could be appropriate in a criminal case because we find it would not be factually warranted here.

{¶ 91} For the foregoing reasons, we find the trial court did not abuse its discretion when it refused to give appellant's proposed jury instruction. Accordingly, we overrule his second assignment of error.

*State v. O.E.P-T, supra.*

A claim that a state trial court abused its discretion is not reviewable in habeas corpus. Abuse of discretion is not a denial of due process. *Sinistaj v. Burt,* 66 F.3d 804 (6th Cir. 1995). However, as the Magistrate Judge reads the Petition, Padilla-Torres is not claiming an abuse of discretion in refusing to give the proposed jury instruction, but a flat-out denial of a constitutional right.

However, Petitioner has presented no Supreme Court precedent finding a constitutional violation in failure to give a jury instruction. Every element of a crime must be submitted to the jury and decided by them; a court cannot take an issue from the jury by deciding the issue itself or by use of a mandatory presumption. *Sandstrom v. Montana*, 442 U.S. 510 (1979); *Carella v. California,* 491 U.S. 263 (1989); *United States v. Gaudin,* 515 U.S. 506 (1995). But the instructions given here in no way withdraw an element from the jury.

To show that jury instructions are contrary to federal law is "not easy because 'instructional errors of state law generally may not form the basis for federal habeas relief.'" *Keahey v. Marquis,* 978 F.3d 474 (6th Cir. 2020), citing *Gilmore v. Taylor,* 508 U.S. 333, 344 (1993). To prevail, a habeas petitioner "must show that such a botched interpretation violated clearly established United States Supreme Court decisions. And even then, he still must show that the mistake violated concrete Supreme Court holdings," *Id.* citing *Marshall v. Rodgers,* 569 U.S. 58, 61 (2013), not generalized principles, citing *Woods v. Donald,* 575 U.S. 312, 318 (2015). In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous, or universally condemned; taken as a whole they must be so infirm that they rendered the entire trial fundamentally unfair. *Waddinngton v. Sarausad,* 555 U.S. 179, 192-94 (2009); *Henderson v. Kibbe,* 431 U.S. 145 (1977). The only question for a habeas court to consider is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62 (1991), *quoting Cupp v. Naughten*, 414 U.S. 141 (1973). The category of infractions that violate fundamental fairness is very narrow. *Levingston v. Warden*, 891 F.3d 251 (6th Cir. 2018); *Byrd v. Collins*, 209 F.3d 486 (6th Cir. 2000), *citing Dowling v. United States*, 493 U.S. 342, 352 (1990), *Keahey v. Marquis*, 978 F.3d 474, 478 (6th Cir. 2020).

Petitioner has not shown that the Tenth District's ruling on his jury instruction claim is contrary to or an objectively unreasonable application of the relevant Supreme Court precedent. Ground Two, therefore, should be dismissed on the merits.

**Ground Three:  Ineffective Assistance of Trial Counsel**

In his Third Ground for Relief, Petitioner asserts his trial attorney provided ineffective assistance of trial counsel in three ways:  (1) failure to object to "other acts" evidence, (2) failure to request an "other acts" jury instruction and (3) failure to object to the Nationwide CAC report (Reply, ECF No. 12, PageID 1262).

As restated in the Reply, Ground Three does not contain a claim of ineffective assistance of trial counsel for failure to object to testimony by a child.  This is the sub-claim to which Respondent raised a procedural default defense.  Because Petitioner has effectively abandoned this sub-claim, it will not be discussed further.

Petitioner raised ineffective assistance of trial counsel, cumulatively considered, as his third assignment of error on direct appeal.  The Tenth District decided it as follows:

> {¶ 145} In his third assignment of error, appellant argues he received ineffective assistance of counsel. Those arguments are not well-taken.
>
> **1. Controlling Law and Standard of Review**
> {¶ 146} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) counsel's performance was deficient or objectively unreasonable, as determined by " 'prevailing professional norms' " and (2) that the deficient performance of counsel prejudiced the defendant. *State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 77, quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
>
> {¶ 147} To show that trial counsel's performance was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show counsel's actions were not trial strategies prompted by reasonable professional judgment.  *Strickland* at 689, 104 S.Ct. 2052. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675, 693 N.E.2d 267 (1998). Tactical or strategic decisions,

even if unsuccessful, do not generally constitute ineffective assistance of counsel. *State v. Frazier*, 61 Ohio St.3d 247, 255, 574 N.E.2d 483 (1991). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-42, 538 N.E.2d 373 (1989).

{¶ 148} Prejudice results when " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Bradley* at 142, 538 N.E.2d 373, quoting *Strickland* at 694, 104 S.Ct. 2052. " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Id.*, quoting *Strickland* at 694, 104 S.Ct. 2052.

{¶ 149} When analyzing an ineffective assistance of counsel claim, an appellate court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland* at 697, 104 S.Ct. 2052. *See also State v. Wade,* 10th Dist. No. 20AP-456, 2021-Ohio-4090, 2021 WL 5368000, ¶ 19. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice * * * that course should be followed." *Strickland* at 697, 104 S.Ct. 2052.

## 2. Analysis

{¶ 150} Appellant asserts his trial counsel was ineffective in three ways: (1) failing to object to the introduction of prior bad acts of domestic violence; (2) failing to request an "other acts" instruction, as contemplated by *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651; and (3) failing to object to the presentation and admission of the entire Nationwide CAC report without redactions. (Appellant's Brief at 28-34.) Additionally, appellant asserts the cumulative effect of counsel's alleged errors rendered his trial counsel ineffective.

{¶ 151} As to the merits of each ineffective assistance allegation, the state argues appellant fails to rebut the presumption that his trial counsel provided him with adequate representation. The state also contends that appellant has failed to demonstrate how he was prejudiced by any of the alleged errors individually or cumulatively.

### a. Failure to object to testimony and evidence about prior bad acts of domestic violence

{¶ 152} Appellant first alleges his attorney was ineffective for failing to object to the introduction of irrelevant and inadmissible prior bad acts evidence presented to the jury through the testimony of R.S., Alicia Daniels (the forensic interviewer at Nationwide Children's Hospital), and A.C., and through State's Exhibit B (Ms. Daniels's report). This evidence pertained to the allegation that appellant previously committed domestic violence against his wife.

{¶ 153} While explaining her strained relationship with A.C., R.S. stated: "There was always a fight or [appellant] would hit [A.C.]. You would hear her screaming from downstairs. We just -- we weren't allowed to have any kind of connection with her or each other." (Tr. Vol. II at 251.) A.C. testified that appellant "was arrested for assaulting" her. (Tr. Vol. II at 294.) And Ms. Daniels testified that, in her forensic interview, R.S. "talked about exposure to some domestic violence from her stepfather *277 towards her mother," "physical abuse from her stepfather towards her siblings," physical abuse towards herself, and "a lot of emotional maltreatment." (Tr. Vol. III at 359.) Ms. Daniels's report also reflected a history of domestic violence in the home. (Trial Ex. B at 4, 27, 44, 52.) No specific details about the domestic violence were presented at trial.

{¶ 154} Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. "Evidence which is not relevant is not admissible." Evid.R. 402. "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Evid.R. 404(B). However, this evidence may be relevant for other purposes, such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*; *accord* R.C. 2945.59. The list of permitted purposes in Evid.R. 404(B) is not exhaustive. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 18. Rather, "evidence of other crimes, wrongs, or acts may be admissible for any purpose material to the issue of guilt or innocence, as long as it is not being introduced for the purpose of showing the accused's propensity to commit bad acts." *State v. Boles*, 187 Ohio App.3d 345, 2010-Ohio-278, 932 N.E.2d 345, ¶ 49 (2d Dist.). But, even if evidence is relevant, it is not admissible "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A).

{¶ 155} Appellant concedes in his brief that "the claims of domestic violence[,] [at most,] help form the background and explain why

there was a lack of reporting on behalf of R.S." (Appellant's Brief at 28.) Thus, he arguably concedes the evidence was relevant under Evid.R. 401.

{¶ 156} Ultimately, appellant argues his trial counsel's failure to object to this evidence under Evid.R. 403 constituted deficient performance. Generally, he contends that the brief and vague reference to these prior domestic violence incidents tainted the jury's perception of him. (Appellant's Brief at 29.) Again, appellant concedes relevance but asserts such evidence was unfairly prejudicial. Given that there were only four references to this other-acts evidence over the course of a four-day trial, and that these references were not descriptive and did not amount to anything more than a brief mention of the prior history, we find that trial counsel's objection to such testimony and evidence would have been futile and not likely sustained if made.

{¶ 157} Defense counsel's failure to object to *admissible* evidence does not constitute deficient performance under *Strickland*. *See, e.g.*, *State v. Tyler*, 10th Dist. No. 05AP-989, 2006-Ohio-6896, 2006 WL 3775876, ¶ 40. "Counsel is certainly not deficient for failing to raise a meritless issue." *State v. Issa*, 93 Ohio St.3d 49, 68, 752 N.E.2d 904 (2001). Appellant has failed to demonstrate that an objection to this other-acts evidence would have been successful; thus, we find he has not demonstrated deficient performance.

{¶ 158} And, assuming arguendo that the challenged other-acts evidence was inadmissible, "[f]ailure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel." *State v. Holloway*, 38 Ohio St.3d 239, 244, 527 N.E.2d 831 (1988). *See also State v. Pawlak*, 8th Dist. No. 99555, 2014-Ohio-2175, 2014 WL 2167887, ¶ 81-83; *State v. Taylor*, 10th Dist. No. 12AP-870, 2013-Ohio-3699, 2013 WL 4678049, ¶ 33-35. As the Supreme Court of Ohio has explained:

> "[E]xperienced trial counsel learn that objections to each potentially objectionable event could actually act to their party's detriment. * * * In light of this, any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial * * * that failure to object essentially defaults the case to the state. Otherwise, defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice."

*State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 140, quoting *Lundgren v. Mitchell*, 440 F.3d 754, 774 (6th Cir. 2006).

{¶ 159} In this case, defense counsel's failure to object can be reasonably viewed as trial strategy or tactical choice. This was a situation where a single offhand reference was made to domestic violence on a few independent occasions. The reference was not detailed and, once it was made by the witness, the prosecutor did not pursue any additional inquiry about the topic. Objecting in each of these separate instances could have brought a heightened awareness to the testimony—something trial counsel might have intended to avoid. Accordingly, we find trial counsel's failure to object to minor references such as those presented here, even if erroneous, may have been a reasonable tactical choice. For these reasons, we conclude counsel's failure to object to this other-acts evidence did not constitute deficient performance.

{¶ 160} Moreover, appellant fails to demonstrate prejudice, or a reasonable probability that, but for his trial counsel's failure to object to these brief and non-descriptive references to alleged domestic violence incidents between appellant and A.C., the result of the proceeding would have been different. Appellant broadly contends that "[t]he repeated introduction of [this other-acts evidence] tainted the [jury's] view of [him]," and cast him "as someone prone to commit crime." (Appellant's Brief at 29.) However, the jury's verdict, which included acquittals on four counts, belies his claim that the admission of irrelevant and inadmissible other-acts evidence generally tainted the jury's view of him, so as to satisfy *Strickland*'s prejudice prong.[3] *See, e.g.*, *State v. Gardner*, 2d Dist. No. 21357, 2010-Ohio-6479, 2010 WL 5550244, ¶ 33.

{¶ 161} Additionally, the state produced ample evidence supporting the counts of which the jury found appellant guilty. R.S. provided direct testimony of appellant's sexual conduct and provided a description of appellant's penis that was consistent with A.C.'s description. And, importantly, the state played six recordings containing appellant's inculpatory statements, acknowledgments, and admissions relating to the sexual conduct R.S. described. On those six recordings, appellant never expressly denied engaging in any sexual encounters with R.S. He admitted to some (namely, mutual oral sex), told A.C. where the first encounter happened (living room of their Chatterly residence), informed A.C. where other encounters occurred (the marital bed, for instance), justified his actions (e.g., he was fighting with A.C. and R.S. was not innocent), and repeatedly apologized for his actions. Although

appellant unequivocally denied all allegations in his trial testimony, his credibility was undoubtedly undermined by the inculpatory statements he made on those six recordings. Accordingly, in light of this evidence, we do not believe trial counsel's failure to object to the other-acts evidence impacted the outcome of appellant's trial.

{¶ 162} Based on the foregoing, we find trial counsel's failure to object to other-acts evidence concerning prior domestic violence against A.C. did not constitute ineffective assistance of counsel.

**b. Failure to request an other-acts evidence limiting instruction**

{¶ 163} Appellant also contends his trial counsel's failure to request a limiting instruction concerning the other-acts evidence constituted ineffective assistance of counsel. As appellant notes, when other-acts evidence is presented at trial, " 'a court should explain both the specific purpose for which the evidence may be considered and the rationale for its admission on the record.' " (Appellant's Brief at 30, quoting *Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651 at ¶ 34.)

{¶ 164} Such instruction is given, where appropriate, to mitigate the risk of a jury using such evidence improperly. The Supreme Court has cautioned trial courts, however, about giving such limiting instruction *sua sponte* any time other-acts evidence is presented at trial. "Depending on the nature of the other-acts evidence and the context in which it is used, defense counsel may as a matter of strategy wish to avoid highlighting the evidence for the jury." *Hartman* at ¶ 67, citing *State v. Schaim*, 65 Ohio St.3d 51, 61, 600 N.E.2d 661 (1992), fn. 9 ("the decision not to request a limiting instruction is sometimes a tactical one, and we do not wish to impose a duty on the trial courts to read this instruction when it is not requested").

{¶ 165} As courts, including this one, have recognized, trial counsel may decide, as a matter of trial strategy, not to request a limiting instruction due to concerns that a limiting instruction "will only emphasize in the juror's minds the evidence of other criminal acts committed by the defendant, thereby reinforcing the prejudice." *Strongsville v. Sperk*, 8th Dist. No. 91799, 2009-Ohio-1615, 2009 WL 866915, ¶ 38. *See State v. Hester*, 10th Dist. No. 02AP-401, 2002-Ohio-6966, 2002 WL 31819725, ¶ 15 ("Counsel may have declined to request a limiting instruction regarding appellant's prior convictions out of concern that, if such an instruction were given, the prior convictions would be once again called to the jury's attention."). The defense's trial strategy in this

case was to undermine the credibility of R.S. and A.C., emphasize the lack of physical evidence, even with appellant's cooperation, and add context to the inculpatory statements appellant made on the six recordings. Given the brief, vague, and infrequent references to prior domestic violence incidents involving A.C., we find the decision not to request a limiting instruction was consistent with the trial strategy of appellant's trial counsel.

{¶ 166} Moreover, as described in the previous section, the state produced ample evidence supporting all counts on which appellant was convicted, including *280 testimony from R.S. and inculpatory statements made by appellant conceding he engaged in some sexual conduct with R.S. Accordingly, we do not find his trial counsel's failure to request a limiting instruction impacted the outcome of trial.

{¶ 167} Based on the foregoing, we find appellant fails to demonstrate either the deficient performance or prejudice *Strickland* requires to support this allegation of ineffective assistance of counsel.

### c. Allowing the full Nationwide CAC report to be presented and admitted as evidence without redactions

{¶ 168} Appellant also argues his trial counsel was ineffective in failing to object to the presentation and admission of the entire Nationwide CAC report (Trial Ex. B), without redactions. (Appellant's Brief at 29-30.) He specifically takes issue with two sections, and generally alleges that "[m]any of the statements found in the report cannot be attributed to seeking medical treatment" under Evid.R. 803(4). (*See id.*) Our analysis is limited to the specific passages appellant identifies in his brief. *See*, *e.g.*, *State v. C.C.B.*, 10th Dist. No. 18AP-782, 2019-Ohio-3631, 2019 WL 4272001, ¶ 38, citing *In re L.W.*, 10th Dist. No. 17AP-587, 2018-Ohio-2099, 2018 WL 2460010, ¶ 46; App.R. 16(A)(7).

{¶ 169} At oral argument before this court, the state conceded that not all statements contained in the Nationwide CAC report were admissible as statements for purposes of medical diagnosis or treatment under Evid.R. 803(4). The state also agreed the Nationwide CAC report should not have been admitted in its entirety and that some of the extraneous statements should have been redacted. Nonetheless, the state maintains that appellant fails to demonstrate that his trial counsel was ineffective for failing to object

to the admission of the entire report or that the improper admission of this unredacted report affected the outcome of trial.

{¶ 170} Evid.R. 801(C) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is generally inadmissible unless an exception applies. Evid.R. 802. Pertinent here, Evid.R. 803 excludes various items from the hearsay rule, "even though the declarant is available as a witness," including "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Evid.R. 803(4). The term "medical diagnosis" in Evid.R. 803(4) includes a mental health diagnosis. *State v. R.L.R.*, 10th Dist. No. 18AP-971, 2020-Ohio-4577, 2020 WL 5705073, ¶ 16, citing *In re S.A.*, 12th Dist. No. CA2017-07-092, 2017-Ohio-8792, 2017 WL 5989070, ¶ 41. *See also State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, ¶ 33-44.

{¶ 171} " '[Evid. R.] 803(4) encompasses statements made by persons who bring the patient to the hospital or doctor's office, as long as the third person's statements are in subjective contemplation of treatment or diagnosis. * * * Where, however, circumstances indicate the third [person] is merely speculating as to facts relating to the injury, exclusion may be warranted since the essential element of reliability is not present.' " *State v. Thompson*, 2d Dist. No. 22984, 2010-Ohio-1680, 2010 WL 1511496, ¶ 24, quoting Weissenberger's *Ohio Evidence* Courtroom Manual 583 (2008). *See also State v. Airwyke*, 11th Dist. No. 2006-T-0073, 2007-Ohio-3199, 2007 WL 1810524, ¶ 21. The hearsay exception provided by Evid.R. 803(4) is limited to those statements made by the patient (or third party who brought the patient to the medical facility) which are reasonably pertinent to an accurate diagnosis and should not be a conduit through which matters of no medical significance would be admitted. *State v. Boston,* 46 Ohio St.3d 108, 121, 545 N.E.2d 1220 (1989).

{¶ 172} *First*, appellant takes issue with some of the "order comments" in the "Referral to Behavioral Health/Psychiatry/Psychology" section of that report, which describe R.S.'s "pertinent past history" as follows:

"Chronic exposure to DV against mother by her biofather and stepfather. Family currently in fear of being killed by

> stepfather[ ] now that patient has disclosed. She was
> sexually abused by stepfather's son in the past, and she was
> seen in 2014 in our CAC for that at the time. The
> stepfather's son is serving prison time currently for the
> crime. Patient did not disclose about stepfather until today
> (8/7); however, they were both sexually abusing her during
> the same time periods. Stepfather continued after the
> stepbrother was incarcerated."

(Appellant's Brief at 29, quoting Trial Ex. B at 18.)

{¶ 173} Appellant concedes the rule permits Dr. Brink to "repeat the allegations made by R.S., assuming they were for the purpose of medical treatment," but takes issue with the fact that this paragraph is Dr. Brink's summary of R.S.'s responses during her forensic interview at Nationwide CAC—i.e., they are not framed as the "words of R.S." (Appellant's Brief at 29.) He contends this paragraph contains an out-of-court statement "made by a medical professional that [improperly] asserts that a crime—the one [appellant] is on trial for—occurred." (Appellant's Brief at 29.) Since this paragraph is designated as R.S.'s "pertinent past history," however, it can be inferred that the information in this paragraph came from statements made by R.S. (or A.C.) for purposes of medical treatment and diagnosis. And because this paragraph is included as part of Dr. Brink's referral of R.S. to a mental health provider, context clearly indicates it reflects a summary of information obtained from R.S. and A.C. that Dr. Brink believed was pertinent to this referral—not an improper opinion that the charged offenses actually occurred. Accordingly, this argument is not well-taken.

{¶ 174} Appellant also argues this paragraph improperly "states, as fact, that the family is now in fear of [being killed by] him," which he claims "implies that [appellant] has a guilty consci[ence]." (Appellant's Brief at 29-30.) Without further explanation, we cannot ascertain how the former implies the latter. In any event, we agree that information about *the family's* fear of appellant killing them was arguably not made for purposes of *R.S.'s* medical treatment and diagnosis. It was thus not admissible under Evid.R. 803(4). Finding this statement to be inadmissible hearsay, a pretrial motion to suppress this statement (or objection at trial) would not have been futile and would likely have been sustained if made, as there would be no justification for its admission. Accordingly, we must next consider whether failing to object constituted deficient performance.

{¶ 175} Failing to object to irrelevant and prejudicial testimony may sometimes be viewed as tactical. In this case, however, counsel's failure to seek exclusion of the statement that the family is afraid appellant will kill them cannot reasonably be viewed as trial strategy or tactical choice. Defense counsel had this report prior to trial. We acknowledge that there may be strategy involved in an attorney's decision not to object to evidence during trial; but, in this case, that would not have been necessary. A pretrial suppression motion could have been filed, or defense counsel could have moved for redaction of this statement outside of the presence of the jury. Thus, we find there was no tactical reason to acquiesce to its inclusion in the admitted report.

{¶ 176} Appellant argues prejudice under *Strickland* by claiming the paragraph's reference to domestic violence and his family fearing him "created a propensity inference that [appellant] commits crimes against his family." (Appellant's Brief at 30.) Even assuming that to be true, we find appellant cannot demonstrate there is a reasonable probability the outcome of the trial would have been different if these two statements had been excluded from the report. The state presented ample evidence of guilt, including numerous inculpatory statements made by appellant on the six recordings, R.S.'s direct testimony of appellant's sexual conduct with her, and R.S.'s ability to provide a description of appellant's penis that was consistent with A.C.'s description. Trial counsel's failure to seek suppression of two sentences typed in a small font size and buried in a paragraph on a page in the middle of the 53-page exhibit does not amount to the prejudice required by *Strickland*.

{¶ 177} We find that all other statements in this paragraph were made for purposes of—and are reasonably pertinent to—R.S.'s mental health medical treatment and diagnosis. Thus, they fall within Evid.R. 803(4)'s hearsay exception. Based on the forgoing, we find appellant fails to demonstrate that an objection to Dr. Brink's summary of the allegations R.S. made against him would have been successful. Failure to object to admissible evidence does not constitute deficient performance of counsel under *Strickland*. *See Tyler*, 2006-Ohio-6896 at ¶ 40; *State v. Taylor*, 78 Ohio St.3d 15, 31, 676 N.E.2d 82 (1997). Moreover, for the same reasons described above, he cannot demonstrate that the failure to suppress these statements prejudiced him.

{¶ 178} Based on the foregoing, we conclude that defense counsel's failure to seek exclusion of this paragraph in the Nationwide CAC report did not constitute ineffective assistance.

{¶ 179} *Second*, appellant takes issue with a sentence in the "Interview Summary" section authored by Ms. Daniels[4] stating: "The child's disclosure at the Child Assessment Center was clear, coherent, and consistent." (Appellant's Brief at 30, citing Trial Ex. B at 8.) Of note, Ms. Daniels was not asked about this statement in the report during her trial testimony. Appellant argues his trial counsel was ineffective in failing to seek excision of this statement from the Nationwide CAC report because it improperly reflected Ms. Daniels's opinion about the veracity of R.S.'s statements. (Appellant's Brief at 30.)

{¶ 180} The Supreme Court has held that an expert witness may not testify as to their opinion of the veracity of a child declarant. *Boston* at 128-29, 545 N.E.2d 1220. More generally, an expert may not provide opinion testimony regarding the truth of a witness's statements or testimony. *State v. Stowers*, 81 Ohio St.3d 260, 262, 690 N.E.2d 881 (1998). Such testimony is presumptively prejudicial and inadmissible because it " 'infringe[s] upon the role of the fact finder, who is charged with making determinations of veracity and credibility.' " *Boston* at 128-29, 545 N.E.2d 1220, quoting *State v. Eastham*, 39 Ohio St.3d 307, 312, 530 N.E.2d 409 (1988) (Brown, J., concurring). However, an expert may provide testimony that supports "the truth of the facts testified to by the child, or which assists the fact finder in assessing the child's veracity." (Emphasis deleted.) *Stowers* at 262-63, 690 N.E.2d 881. This testimony " 'does not usurp the role of the jury, but rather gives information to a jury which helps it make an educated determination.' " *Id.* at 263, 690 N.E.2d 881, quoting *State v. Gersin*, 76 Ohio St.3d 491, 494, 668 N.E.2d 486 (1996). *See also State v. Sayles*, 8th Dist. No. 108524, 2020-Ohio-5508, 2020 WL 7062485, ¶ 37-40.

{¶ 181} Here, we conclude Ms. Daniels's statement in the Nationwide CAC report that R.S.'s account was "clear, coherent, and consistent" does not amount to an opinion on the veracity of R.S.'s allegations. Rather, Ms. Daniels's impression that R.S. gave a "clear, coherent, and consistent" statement is admissible information that can help the jury make an educated determination about the manner in which R.S. recounted her story and did not improperly vouch for R.S.'s credibility. Accordingly, because the testimony was permissible under *Boston* and *Stowers*, we find trial counsel was not ineffective for failing to object to this statement in the Nationwide CAC report.

{¶ 182} Even if counsel were deficient in failing to object to this statement in Ms. Daniels's report—which she was not asked about

at trial—appellant has not demonstrated how he was prejudiced by the deficient performance such that the result of the trial could have been different. R.S. testified about the sexual encounters at trial. The state also presented evidence and testimony relating to the statements R.S. made about the sexual abuse in 2018 when she reported it. Thus, the jury was able to make its own determination during the trial as to whether R.S.'s statements were clear, coherent, and consistent for purposes of assessing her credibility. Accordingly, we find that appellant was not deprived of effective assistance of counsel when his counsel failed to object to the admission of the full Nationwide CAC report on the basis of this statement.

### d. Cumulative Error

{¶ 183} Finally, appellant argues his counsel was ineffective based on the cumulative effect of his errors during the trial. "Under this doctrine, a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous errors does not individually constitute cause for reversal." *State v. Graham*, 164 Ohio St.3d 187, 2020-Ohio-6700, 172 N.E.3d 841, ¶ 169. *See also State v. C.D.S.*, 10th Dist. No. 20AP-355, 2021-Ohio-4492, 2021 WL 6055939, ¶ 112. As applied to a claim for ineffective assistance of counsel, "[e]ach assertion of ineffective assistance of counsel going to cumulative error depends on the merits of each individual claim; when none of the individual claims of ineffective assistance of counsel have merit, cumulative error cannot be established simply by joining those meritless claims together." *Graham* at ¶ 170, citing *State v. Hill*, 75 Ohio St.3d 195, 661 N.E.2d 1068 (1996).

{¶ 184} We have already concluded that appellant has failed to demonstrate his trial counsel committed multiple errors under the performance prong of *Strickland*. Thus, in the absence of establishing that multiple errors were committed by his counsel at trial, he cannot establish cumulative error. Appellant has not, with these **\*284** arguments, carried the burden of establishing an ineffective assistance of counsel claim on appeal. *See State v. Gear*, 3d Dist. No. 15-22-03, 2023-Ohio-1246, 2023 WL 2968095, ¶ 59. Because all of his individual claims of ineffective assistance of counsel, with the exception of one (sentence in the report concerning the family's fear of appellant), are without merit as to deficient performance, we find he has failed to show cumulative error sufficient to reverse his convictions.

31

{¶ 185} Even assuming we found appellant's ineffective assistance allegations, when considered in the aggregate, amount to deficient performance of his trial counsel, we nonetheless find he cannot demonstrate the prejudice necessary under *Strickland*. This is because the state produced ample evidence of his guilt at trial. R.S. testified about the sexual encounters she had with him and described appellant's penis in a manner consistent with A.C.'s description of it. In the six recorded conversations between appellant and A.C., appellant never expressly denied having any sexual encounters with R.S. Instead, the jury heard appellant admit to engaging in some sexual conduct with R.S. (namely, mutual oral sex), describe where the first encounter occurred (living room of their Chatterly residence) and where others took place (the marital bed, for instance). The jury also heard him justify (e.g., he was fighting with A.C. and R.S. was not innocent) and apologize for his actions. Even if none of the performance errors appellant alleges occurred, we do not believe, in light of this inculpatory evidence, it is reasonably probable the outcome of his trial would have been different.

{¶ 186} Based on the foregoing, we find that appellant is unable to demonstrate ineffective assistance of counsel. Accordingly, we overrule his third assignment of error.

*State v. O.E.P-T, supra.*

Petitioner acknowledges that the governing standard for ineffective assistance of counsel claims is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing*

*Knowles v. Mirzayance,* 556 U.S.111 (2009).

To prevail on an ineffective-assistance-of-counsel claim, a movant must establish that (1) counsel's performance was deficient and (2) the deficiency resulted in prejudice, meaning that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Shimel v. Warren*, 838 F.3d 685, 696 (6th Cir. 2016).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168, 184 (1986), *citing Strickland, supra.*; *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), *citing Strickland, supra*; *Blackburn v. Foltz*, 828 F.2d 1177, 1180 (6th Cir. 1987), *quoting Strickland,* 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), *quoting Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the

33

> outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes*, 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id.*, at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. *Id.*, at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter*, 562 U.S. 86, 111-112 (2011).

The Tenth District recognized *Strickland* as the governing Supreme Court precedent and applied it in deciding Petitioner's ineffective assistance of trial counsel claim. His burden in this Court is to show that application was objectively unreasonable. Petitioner's Reply is much shorter than the Tenth District's decision of this issue and consists largely of assertions these omissions by counsel were prejudicial (ECF No. 12, PageID 1262-65).

Petitioner's assertions of prejudice are unpersuasive in the face of the very thorough opinion of the Tenth District. Ground Three should be dismissed.

**Ground Four: Insufficient Evidence**

In his Fourth Ground for Relief, Petitioner asserts he was convicted on constitutionally insufficient evidence.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d

987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.* A sufficiency challenge should be assessed against the elements of the crime, not against the elements set forth in an erroneous jury instruction. *Musacchio v. United States*, 577 U.S. 237 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-

> evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  When reviewing a claim for sufficient evidence, a federal habeas court must apply a twice-deferential standard." *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam).  In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam).  The federal courts do not make credibility determinations in reviewing

sufficiency of the evidence claims. *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010).

Padilla-Torres raised an insufficient evidence claim as his seventh assignment of error and the Tenth District decided it as follows:

> {¶ 138} In his seventh assignment of error, appellant contends the evidence at trial was insufficient to support his convictions.

> **1. Controlling Law and Standard of Review**

> {¶ 139} The issue of whether the evidence is sufficient as a matter of law to support a conviction involves a determination of whether the state met its burden of production at trial. *See, e.g., State v. Smith*, 10th Dist. No. 03AP-1157, 2004-Ohio-4786, 2004 WL 2008465, ¶ 16; *State v. Frazier*, 10th Dist. No. 05AP-1323, 2007-Ohio-11, 2007 WL 16778, ¶ 7; *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541. We do not weigh the evidence but instead determine " 'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. We essentially assume the state's witnesses testified truthfully and determine if that testimony satisfies each element of the crime. *State v. Watkins*, 10th Dist. No. 16AP-142, 2016-Ohio-8272, 2016 WL 7494358, ¶ 31, quoting *State v. Hill*, 10th Dist. No. 07AP-889, 2008-Ohio-4257, 2008 WL 3878363, ¶ 41. Thus, evidence is sufficient to support a conviction where, if believed, that evidence would allow any rational trier of fact to conclude that the state proved each element of the offense beyond a reasonable doubt. *Frazier* at ¶ 7, citing *Jenks* at paragraph two of the syllabus.

> **2. Analysis**

> {¶ 140} Appellant generally contends Counts 5 through 13 are not supported by sufficient probative evidence because no physical evidence of any offense was presented at trial and R.S. was not a credible witness. (Appellant's Brief at 44.) These arguments, however, pertain not to the sufficiency of evidence, but to the manifest weight. Having already overruled appellant's manifest weight challenge in the sixth assignment of error, this portion of his argument is not well-taken.

{¶ 141} Appellant also argues the state failed to present sufficient probative evidence establishing R.S. was under the age of 10 for the rape by fellatio offense charged in Count 7 to support the guilty verdict for the under-10 specification. (Appellant's Brief at 42-44.) We disagree.

{¶ 142} R.S. testified about sexual conduct (fellatio) that occurred at the family's Bar Harbor home multiple times. (Tr. Vol. II at 222-26.) She testified that she was 8 when she moved to that residence and left "shortly after" her 10th birthday. (Tr. Vol. II at 223-26.) A.C. testified the family lived at the Bar Harbor residence from October 2012 until September/October 2014. (Tr. Vol. II at 289.) Because R.S. was born in June 2004, she was under 10 for approximately 1 year and 8 months out of 2 years the family spent in that home. R.S. described the acts as occurring many times, often, and for a duration of almost 7 years. (*See*, *e.g.*, Tr. Vol. II at 218, 221-28, 231-34, 236-37, 239-40.) And R.S. testified that appellant performed oral sex on her before she turned 10:

> [STATE:] And what would he do once you were sitting on his face?
> [R.S.:] He would perform oral sex on me.
> [STATE:] Okay. So his mouth was touching your vagina?
> [R.S.:] Yes.
> [STATE:] And that's something that started once you moved to Chatterly Lane?
> [R.S.:] No, that would happen when we lived in Bar Harbor too.
> [STATE:] Okay. So it started before Chatterly Lane?
> [R.S.:] Yes.
> [STATE:] So that's before you even turned 10?
> [R.S.:] Yes.

(Tr. Vol. II at 228-29.)

{¶ 143} Construing the evidence in the light most favorable to the state, a reasonable trier of fact could have found the state proved, beyond a reasonable doubt, that appellant engaged in fellatio with R.S. when she was younger than the age of 10 based on R.S.'s testimony. Therefore, we conclude appellant's conviction for Count 7 is supported by sufficient evidence.

{¶ 144} For the foregoing reasons, appellant's seventh assignment of error is overruled.

*State v. O.E.P-T, supra.*

Because the Tenth District decided this claim on the merits, Petitioner's burden in habeas is to show the decision was an objectively unreasonable application of *Jackson v. Virginia*. He first contends Counts 5 through 13 are not supported by sufficient probative evidence because of the lack of physical evidence and the lack of credibility on the part of the victim (Reply, ECF No. 12, PageID 1266). However as the Tenth District pointed out in overruling this assignment of error, those claims go to manifest weight rather than sufficiency. *Supra* at ¶ 140.

Petitioner contends no documentary proof was offered of the victim's being below the age of ten. But no such documentation is necessary; R.S. testified, as the Tenth District found, that she was under ten when the abuse started. R.S. was certainly competent to testify as to her own age. Petitioner's argument that she was not credible was an argument for the jury.

The testimony of a victim is sufficient evidence under *Jackson*.

> "[T]his Court has long held that the testimony of the victim alone is constitutionally sufficient to sustain a conviction." *Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008), *citing United States v. Terry*, 362 F.2d 914, 916 (6th Cir. 1966) ("The testimony of the prosecuting witness, if believed by the jury, is sufficient to support a verdict of guilty."); *see also O'Hara v. Brigano*, 499 F.3d 492, 500 (6th Cir. 2007) (holding that victim's testimony that habeas petitioner abducted her and raped her was constitutionally sufficient to sustain conviction despite lack of corroborating witness or physical evidence); *United States v. Howard*, 218 F.3d 556, 565 (6th Cir. 2000) (holding that even if the only evidence was testimony of the victim, that is sufficient to support a conviction, even absent physical evidence or other corroboration); *United States v. Jones*, 102 F.3d 804, 807 (6th Cir. 1996) (noting that there is sufficient evidence to support a conviction even if the "circumstantial evidence does not remove every reasonable hypothesis except that of guilt") (internal quotation marks omitted).

*Bohannon v. Warden*, 2013 U.S. Dist. LEXIS 148355, *31-32 (S.D. Ohio Oct. 4, 2013) (Merz, M.J.)

Petitioner's conviction is plainly based on sufficient evidence and his Fourth Ground for

Relief should be dismissed.

**Ground Five:  Improper Maximum and Consecutive Sentences**

In his Fifth Ground for Relief, Petitioner claims he was improperly sentenced to maximum consecutive sentences in violation of his Sixth Amendment right to have the justifying factors for such sentences found by a jury.  He relies on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004).

Petitioner presented his consecutive sentencing claim to the Tenth District as his fifth assignment of error.  However, he presented it only as an error under state law which the Tenth District found was without merit.  Neither *Apprendi* nor *Blakely* is cited in his appellate brief (State Court Record, ECF No. 8, PageID 71-72).

Because Padilla-Torres failed to present his consecutive sentence claim as a constitutional violation to the Ohio courts, he has procedurally defaulted that claim which should therefore be dismissed.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not

be permitted to proceed *in forma pauperis*.


September 30, 2025.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS


Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.